IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL JACKSON, JR., | ) |
| Plaintiff, | ) Case No. _____ |
| v. | ) |
| | ) Jury Trial Demanded |
| SODEXOMAGIC, LLC., SODEXO, INC. and SDH EDUCATION WEST, LLC. | ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff Michael Jackson, Jr. ("Jackson"), by and through his attorney, Matt Singer Law, LLC, files this Complaint against Defendants SodexoMagic, LLC, Sodexo, Inc., and SDH Education West, LLC (collectively "Sodexo" or "Defendants"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff's federal claims arise under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this case occurred in this district.

1

## FACTUAL ALLEGATIONS

3. Plaintiff Michael Jackson, Jr. is Black and an operating engineer at Chicago Public Schools ("CPS").

4. Jackson is a talented operating engineer with over two decades of experience serving as an engineer for large buildings. He began working as an engineer at CPS in 2007. Jackson is passionate about his job, which involves managing and maintaining school buildings and the mechanical systems within them. In this role, Jackson is responsible for, among other things, maintaining the school buildings' heating, ventilation, air conditioning, plumbing, electrical, refrigeration, and life safety equipment and ensuring that the building remains in compliance with local, state, and federal codes. He has, throughout his employment at CPS buildings, performed his job effectively.

5. Through 2018, Jackson worked directly for CPS. After working at several other locations, he was assigned to Gompers, an elementary school housed in a single building, where he served as engineer. As part of the school consolidations that happened in Rahm Emanuel's mayorship, Gompers's administration was combined with another elementary school, Jesse Owens, which was located a few blocks away. The engineer who had been assigned to the other building was reassigned and Jackson became the engineer responsible for both buildings (collectively, "Owens").

6. After the buildings were combined and Jackson was assigned to cover both of them, he filed a grievance with CPS, maintaining that his pay should be increased to reflect the fact that he was now responsible for two buildings. CPS

agreed with his grievance, classified him as a chief engineer, increased his pay, and provided him with a gas stipend to cover travel between the two buildings.

7. Thus, before Sodexo became his employer, Mr. Jackson was classified as a "chief engineer" and received higher pay than a regular "engineer" for his work covering two school buildings.

8. In 2018, CPS privatized its facilities management and entered into a contract with Sodexo to provide these services.

9. In 2018, Sodexo became Jackson's employer. Because of Jackson's excellent work as engineer at Owens, the buildings were well-managed and in good shape, and, therefore, Owens was considered a favorable assignment. Sodexo immediately attempted to remove Jackson from his position at Owens, a job he had been performing successfully for years, demote him to an "assistant" position at a high school, and replace him with a white engineer. But the CPS facilities manager informed Sodexo that she wanted Jackson to stay at Owens, where he was performing well.

10. Similarly, in another effort to put a white engineer in charge of the Owens school, Sodexo sought to "pod" Jackson with a white engineer who covered two CPS buildings in the area. Sodexo abandoned this plan after Jackson questioned whether he would be paid as "chief engineer" as part of this "podding" arrangement. The white engineer who already covered two buildings was paid as a "chief engineer."

11. Having failed to remove Jackson from his position as engineer at Owens, Sodexo immediately cut Jackson's pay from that of a chief engineer to a

3

regular engineer, even though Jackson remained the sole engineer covering both buildings at Owens. Despite the reduction in pay, however, Jackson continued to have "chief engineer" union dues taken out of his paycheck. The union dues discrepancy was resolved only after Jackson questioned it. Sodexo also took away Jackson's gas allowance, even though Jackson continued to have to travel regularly between the two buildings he covered.

12. Serving as engineer for two buildings is, for obvious reasons, substantially more work than managing a single building. The responsibilities are doubled. By way of example, an engineer must perform daily rounds at two buildings instead of one. When a fire drill is scheduled, the engineer must coordinate two drills instead of one. There are double the restrooms to maintain in working order, double the HVAC/heating/and electrical systems, and two gymnasiums instead of one. Further, the difference in workload only increased once Sodexo took over, because Sodexo implemented new, onerous paperwork requirements that were not in place when CPS managed its own facilities.

13. In contrast to Jackson, Sodexo paid a white engineer a chief engineer's salary to manage two buildings under a single administration at Cardenas, a school identically situated to Owens. At both Cardenas and Owens, nearby schools had been consolidated into one school, with two buildings, under a single administration.

14. Sodexo paid the white engineer in charge of the two Cardenas buildings a chief engineer's salary. In addition, Sodexo assigned an assistant

engineer to help the chief engineer manage the two buildings and reduce the chief engineer's workload.

15. South Loop is another school similarly situated to Owens, with one administration covering two separate buildings. However, unlike Owens, each building had its own engineer. The two (white) engineers shared the workload, unlike Jackson, who was tasked with managing two buildings by himself on a regular engineer's salary.

16. Other schools with multiple buildings, to which multiple non-Black engineers were assigned, included Disney, Faraday and Parker Elementary Schools.

17. Jackson repeatedly complained about the pay discrepancy, but Sodexo refused to pay him as a chief engineer or otherwise address the disparity between him and non-Black engineers who were assigned less work for higher pay.

18. On October 1, 2021, a new entity took over the CPS facilities management contract. Shortly after the transition, Jackson discussed the pay disparity with his new employer. That employer, unlike Sodexo, recognized that it was indefensible to pay Jackson a regular engineer's salary for covering two buildings, and quickly increased his pay to that of a chief engineer.

19. In sum—and in contrast to both its predecessor and successor—Sodexo paid Jackson less for doing more work than his similarly situated non-Black colleagues.

20. As a direct and proximate result of Defendants' conduct, Jackson has suffered wage and financial losses.

21. As a direct and proximate result of Defendants' conduct, Jackson has suffered emotional and mental distress, loss of reputation, embarrassment and humiliation, loss of enjoyment of life, inconvenience, and other non-pecuniary losses.

22. Punitive damages are appropriate because Defendants' conduct was malicious and/or Defendants were recklessly indifferent to Jackson's protected rights.

23. Plaintiff timely filed a cross-filed charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR"). Plaintiff has received his notice of right to sue from the EEOC and timely filed his claims after receiving that notice.[1]

---

[1] The IDHR is still processing the paperwork relating to Jackson's charge. Jackson intends to amend his complaint to add claims under the Illinois Human Rights Act once the IDHR provides the right-to-sue paperwork.

## COUNT I

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

24. Plaintiff realleges the above Paragraphs and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

25. Title VII of the Civil Rights Act of 1964 makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race" or "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race." 42 U.S.C. § 2000e-2(a).

26. By the acts and conduct described above, Sodexo discriminated against Plaintiff because of his race, Black.

27. Plaintiff was subjected to and harmed by Sodexo's discrimination based on his race, Black.

28. As specified in the Lilly Ledbetter Fair Pay Act, Plaintiff suffered a new, actionable harm each time he received a paycheck affected by Defendants' discriminatory pay practices. 42 U.S.C. § 2000e-5(e)(3)(A); *Groesch v. City of Springfield*, 635 F.3d 1020 (7th Cir. 2011).

29. As a direct and proximate result of Sodexo's conduct, Plaintiff has suffered damages.

## COUNT II

### RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

30. Plaintiff realleges paragraphs 1 through 23 and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

31. 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including employment relationships.

32. By the acts and conduct described above, Defendants engaged in illegal intentional racial discrimination against Plaintiff in violation of 42 U.S.C. § 1981.

33. As specified in the Lilly Ledbetter Fair Pay Act, Plaintiff suffered a new, actionable harm each time he received a paycheck affected by Defendants' discriminatory pay practices. 42 U.S.C. § 2000e-5(e)(3)(A); *Groesch v. City of Springfield*, 635 F.3d 1020 (7th Cir. 2011).

34. Plaintiff has been harmed as a direct and proximate result of Defendants' unlawful conduct.

## COUNT III
### Illinois Equal Pay Act

35. Plaintiff realleges Paragraphs 1 through 23 and incorporates them by reference as though fully stated herein as part of Count III of this Complaint.

36. The Illinois Equal Pay Act prohibits employers from discriminating against African American employees by paying them less than non-African American employees for substantially similar work. 820 ILCS 112/10.

37. As described above, Sodexo paid Jackson less than similarly situated non-African American employees for substantially similar work, throughout his employment.

38. Jackson suffered damages each and every time he received a paycheck infected by the discriminatory pay discrepancy. 820 ILCS 112/30(a).

39. Defendants acted with malice and reckless indifference to Jackson's rights. Therefore, compensatory and punitive damages are appropriate. 820 ILCS 112/30(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court find in his favor and against Defendants as follows:

a. Declare that the acts and conduct of Defendants are unlawful and violate Title VII, 42 U.S.C. § 1981, and the Illinois Equal Pay Act;

b. Award Plaintiff the value of all compensation and benefits he has lost as a result of Defendants' unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

d. Award Plaintiff compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other non-pecuniary losses;

e. Award Plaintiff special damages under the Illinois Equal Pay Act;

f. Award Plaintiff liquidated damages under the Illinois Equal Pay Act;

g. Award Plaintiff punitive damages due to Defendants' malicious conduct and/or Defendants' reckless or callous indifference to the statutorily protected rights of Plaintiff;

h. Award Plaintiff prejudgment interest;

i. Award Plaintiff attorneys' fees, costs, and disbursements; and

j. Award Plaintiff such other make whole equitable, injunctive, and legal relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues of fact and damages triable in this action.

Respectfully submitted,

/s/ *Matthew J. Singer*

Dated: September 27, 2023

Matthew J. Singer
MATT SINGER LAW, LLC
77 W. Wacker Dr., Suite 4500
Chicago, Illinois 60601
Phone: (312) 248-9123
Matt@MattSingerLaw.com